## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| Richard Tamez, Billy Tom Medlin, Gavin Reynolds, and James Clark, on behalf of themselves and other similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>BHP Billiton Petroleum (Americas), Inc.,<br><br>Defendant. | CIVIL ACTION 5:15-cv-330-RP<br><br>ELECTRONICALLY FILED<br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE** |

### INTRODUCTION

Plaintiffs Richard Tamez, Billy Tom Medlin, Gavin Reynolds, and James Clark (collectively "Plaintiffs") worked for Defendant Billiton Petroleum (Americas), Inc. ("Defendant"), often working more than twelve-hours a day for up to twenty-one days straight before receiving a single a day off.  Defendant compensated Plaintiffs for these long hours on a day rate basis, paying them a flat amount for all hours worked in a day even though day rate workers are entitled to overtime under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*  29 C.F.R. § 778.112.  Plaintiffs' claims are straight forward: Defendant's compensation plan for day rate workers violated the FLSA because it failed to pay them overtime.

Plaintiffs seek conditional certification under the FLSA and authorization to send notice to other putative plaintiffs so they have the opportunity to join before their statute of limitations expires.  Plaintiffs and the putative class of day rate workers were denied overtime under Defendant's common compensation policy, and they are similarly situated as a result.  The Court should allow Plaintiffs to send court-approved notice of this action to putative class members, informing them of their rights and providing them the opportunity to make a claim for their pay.

## FACTUAL BACKGROUND

### I.   PROCEDURAL HISTORY

Plaintiffs filed this collective action on behalf of themselves and other similarly situated individuals on April 24, 2015, against Defendant for unpaid overtime under the FLSA.  (Compl., ECF No. 1.)  Plaintiffs allege Defendant unlawfully employed some day rate workers as "independent contractors," "1099 employees," and "consultants" (collectively "independent contractors") and failed to pay all day rate workers overtime for hours worked over forty in a workweek.  (*Id.* at ¶¶ 14, 16–22.)  Defendant answered on May 20, 2015, and denied liability claiming, among other things, that it did not employ Plaintiffs.  (Answer at 1 ¶ 2, ECF No. 7.)  It did not raise any exemption defenses.  (*Id.*)

### II.   RELEVANT FACTS

Defendant is a leading global resources company and is a top producer of major commodities, including iron ore, coal, copper, aluminum, with a substantial interest in oil and gas.  (Compl. at ¶ 12, ECF No. 1.)  It has exploration, development, production, and marketing activities in more than a dozen countries around the globe with significant positions in the deep water Gulf of Mexico, Onshore US, and Australia.  (*Id.*)  Defendant employs over 120,000 employees at 130 locations worldwide.  (*Id.*)

Plaintiffs worked as HSE Specialists for Defendant between April 2013 and March 2015.  (*Id.* at ¶¶ 6–9.)  In addition to Plaintiffs, fifteen other day rate workers[1] have opted in as plaintiffs to this case to date (collectively "Opt-in Plaintiffs").  (Baggio Decl. ¶ 2.)   Defendant classified individuals compensated on a day rate as employees or independent contractors.  (Tamez Decl. ¶

---

[1] Opt-in Plaintiffs worked in a variety of job titles, including Construction Consultant, Drilling Consultant, Facilities Inspector, Fracking Consultant, HSE Specialist, Site Consultant, and Specialist Consultant.  (Tamez Decl. ¶ 3, Medlin Decl. ¶ 3, Reynolds Decl. ¶ 3, Clark Decl. ¶ 3, Campbell Decl. ¶ 3, Carlile Decl. ¶ 3, Gatlin Decl. ¶ 3, Gordon Decl. ¶ 3, Hall Decl. ¶ 3, Nelsoney Decl. ¶ 3, Price Decl. ¶ 3, Rincones Decl. ¶ 3, Savoy Decl. ¶ 3, Ex. C.)

3, Medlin Decl. ¶ 3, Reynolds Decl. ¶ 3, Clark Decl. ¶ 3, Campbell Decl. ¶ 3, Carlile Decl. ¶ 3, Gatlin Decl. ¶ 3, Gordon Decl. ¶ 3, Hall Decl. ¶ 3, Nelsoney Decl. ¶ 3, Price Decl. ¶ 3, Rincones Decl. ¶ 3, Savoy Decl. ¶ 3, Ex. C.)  In some circumstances, it hired day rate employees who were previously independent contractors, but the duties did not change.  (Rincones Decl. ¶¶ 3, 5, Ex. C.)  For both employees and independent contractors, Defendant scheduled the days and hours they were required to work, provided the equipment necessary to perform their duties, instructed them on how to perform their duties, and supervised their performance.  (Tamez Decl. ¶ 4, Medlin Decl. ¶ 4, Reynolds Decl. ¶ 4, Clark Decl. ¶ 4, Campbell Decl. ¶ 4, Carlile Decl. ¶ 4, Gatlin Decl. ¶ 4, Gordon Decl. ¶ 4, Hall Decl. ¶ 4,  Nelsoney Decl. ¶ 4, Price Decl. ¶ 4, Rincones Decl. ¶ 4, Savoy Decl. ¶ 4, Ex. C.)  Most Plaintiffs and Opt-in Plaintiffs actually interviewed for their positions with Defendant. (Tamez Decl. ¶ 4, Medlin Decl. ¶ 4, Reynolds Decl. ¶ 4, Campbell Decl. ¶ 4, Clark Decl. ¶ 4, Gatlin Decl. ¶ 4, Gordon Decl. ¶  4, Hall Decl. ¶ 4, Nelsoney Decl. ¶ 4, Price Decl. ¶ 4, Rincones Decl. ¶ 4, Savoy Decl. ¶ 4, Ex. C.)

Defendant compensated Plaintiffs and Opt-in Plaintiffs on a day rate basis, paying them a flat sum for every day they worked regardless the number of hours worked in the day.  (Tamez Decl. ¶ 5, Medlin Decl. ¶ 5, Reynolds Decl. ¶ 5, Clark Decl. ¶ 5, Campbell Decl. ¶ 5, Carlile Decl. ¶ 5, Gatlin Decl. ¶ 5, Gordon Decl. ¶ 5, Hall Decl. ¶ 5, Nelsoney Decl. ¶ 5, Price Decl. ¶ 5, Rincones Decl. ¶ 6, Savoy Decl. ¶ 5, Ex. C.)  It scheduled them to work on rotations lasting anywhere from seven days to twenty-one days before providing days off.  (Tamez Decl. ¶ 6, Medlin Decl. ¶ 6, Reynolds Decl. ¶ 6, Clark Decl. ¶ 6, Campbell Decl. ¶ 6, Carlile Decl. ¶ 6, Gatlin Decl. ¶ 6, Gordon Decl. ¶ 6, Hall Decl. ¶ 6, Nelsoney Decl. ¶ 6, Price Decl. ¶ 6, Rincones Decl. ¶ 7, Savoy Decl. ¶ 6, Ex. C.)  Defendant scheduled Plaintiffs and Opt-ins Plaintiffs to work twelve-hour shifts on days they worked, but they often ended up working longer.  (Tamez Decl.

¶ 6, Medlin Decl. ¶ 6, Reynolds Decl. ¶ 6, Clark Decl. ¶ 6, Campbell Decl. ¶ 6, Carlile Decl. ¶ 6,

Gatlin Decl. ¶ 6, Gordon Decl. ¶ 6, Hall Decl. ¶ 6, Nelsoney Decl. ¶ 6, Price Decl. ¶ 6, Rincones

Decl. ¶ 7, Savoy Decl. ¶ 6, Ex. C.)  Despite sometimes working over 84 hours in a workweek,

Plaintiffs and Opt-in Plaintiffs did not receive overtime pay under Defendant's day rate plan and

did not receive any guaranteed amount for weeks they worked.  (Tamez Decl. ¶¶ 5, 7; Medlin

Decl. ¶¶ 5, 7; Reynolds Decl. ¶¶ 5, 7; Clark Decl. ¶¶ 5, 7; Campbell Decl. ¶¶ 5 ,7; Carlile Decl.

¶¶ 5, 7; Gatlin Decl. ¶¶ 5 ,7; Gordon Decl. ¶¶ 5, 7; Hall Decl. ¶¶ 5, 7; Nelsoney Decl. ¶¶ 5, 7;

Price Decl. ¶¶ 5, 7; Rincones Decl. ¶¶ 6, 8; Savoy Decl. ¶¶ 5, 7; Ex. C.)  Plaintiffs and Opt-in

Plaintiffs also knew other day rate positions working for Defendant that did not receive

overtime.[2]  (Tamez Decl. ¶ 8, Medlin Decl. ¶ 8, Reynolds Decl. ¶ 8, Clark Decl. ¶ 8, Campbell ¶

8, Carlile Decl. ¶ 8, Gatlin Decl. ¶ 8, Gordon Decl. ¶ 8, Hall Decl. ¶ 8, Nelsoney Decl. ¶ 8, Price

Decl. ¶ 8, Rincones Decl. ¶ 9, Savoy Decl. ¶ 8, Ex. C.)

## LEGAL ANALYSIS

### I.    CONDITIONAL CERTIFICATION IS APPROPRIATE

Plaintiffs seek conditional certification for the following FLSA collective class:

All persons who worked for Defendant and were paid a "day rate" at any time since three years prior to April 24, 2015, the filing date for the Complaint.

(*See* Compl. ¶ 17; Relevant Facts *supra* section II.)

#### a.   Conditional Certification is a "Fairly Lenient" Standard

Under the FLSA, an action for unpaid overtime wages may be maintained "by any one or

more employees for and in behalf of himself or themselves and other employees *similarly*

---

[2] Plaintiffs and Opt-in Plaintiffs identified the following positions that were compensated on a day rate and did not receive any overtime pay: Company men, Completion Consultants & Supervisors, Construction Consultants, Electricians, Directional Drillers, Drill Site Managers, Drilling Supervisors, Fracking Consultants, Mud Engineers, Rig Clerks, Quality Assurance & Control workers, and Well-site Supervisors.  (Tamez Decl. ¶ 8, Medlin Decl. ¶ 8, Reynolds Decl. ¶ 8, Clark Decl. ¶ 8, Campbell Decl. ¶ 8, Carlile Decl. ¶ 8, Gatlin Decl. ¶ 8, Gordon Decl. ¶ 8, Hall Decl. ¶ 8, Nelsoney Decl. ¶ 8, Price Decl. ¶ 8, Rincones Decl. ¶ 9, Savoy Decl. ¶ 8, Ex. C.)

*situated*." 29 U.S.C. § 216(b) (emphasis added).  As the Supreme Court has explained, the

FLSA's collective action mechanism serves the dual purpose of lowering litigation costs for

individual plaintiffs and decreasing the burden on the courts through "efficient resolution in one

proceeding of common issues of law and fact arising from the same alleged discriminatory

activity." *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).  "These benefits . . .

depend on employees receiving accurate and timely notice concerning the pendency of the

collective action, so that they can make informed decisions about whether to participate."  *Id.*

        The Fifth Circuit has not adopted a specific test for conditionally certifying collective

actions, *see Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1216 (5th Cir. 1995), but the

majority of courts in this district apply the two-step approach set forth in  *Lusardi v. Xerox*

*Corp.,* 118 F.R.D. 351 (D.N.J.1987).  *See, e.g.*, *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913,

915 (5th Cir. 2008) (noting conditional certification typically proceeds using the two-stage

analysis); *Wilson v. Atlas Oilfield Const. Co., LLC*, 2014 WL 4546954, at *1 (W.D. Tex. Sept.

12, 2014) (applying *Lusardi* two-tiered approach and conditionally certifying collective class);

*Lay v. Gold's Gym Int'l, Inc.*, 2013 WL 5595956, at *3 (W.D. Tex. Oct. 4, 2013) (same).  At the

first stage, referred to as the "notice stage," the court determines whether a collective action

should be conditionally certified for the purpose of sending notice to potential class members.

*Mooney*, 54 F.3d at 1213.  The plaintiff bears to the burden of showing she is similarly

situated—not identical—to the putative class members. *Pedigo v. 3003 S. Lamar, LLP*, 666 F.

Supp. 2d 693, 698 (W.D. Tex. 2009).  The plaintiff need only provide substantial allegations that

class members were victims of a single decision, policy, or plan to be similarly situated for

certification.[3]  *Mooney*, 54 F.3d at 1214 n.8; *Pedigo*, 666 F. Supp. 2d at 698.  This standard is

"fairly lenient" and "typically results in 'conditional certification' of a representative class."

*Mooney*, 54 F.3d at 1214.  The court's decision is usually based solely on the plaintiff's

pleadings and affidavits, *id.* at 1213–14, and the minimal showing required of the plaintiff means

the court "does not resolve factual disputes, decide substantive issues going to the ultimate

merits, or make credibility determinations," *Lay*, 2013 WL 5595956, at *5.  Indeed, evidence

offered by a defendant need not even be considered at the notice stage, as "it is improper for the

[c]ourt to weigh competing evidence."  *Id.*

         After a case has been conditionally certified, the case continues through discovery as a

representative action.  *Mooney*, 54 F.3d at 1214.  The second stage for certifying collective

actions typically occurs upon a motion to decertify the class after discovery is complete.  *Id.*  At

this stage, the court will make a factual determination whether collective members are similarly

situated and whether the case should be fully or partially decertified.  *Id.*

         **b.   Plaintiffs are Similarly Situated to Other Day Rate Employees**

         Defendant's day rate policy failed to compensate employees for overtime worked,

making Plaintiffs and all putative collective members under the day rate plan similarly situated.

The Department of Labor regulations concerning day rate plans require employers pay day rate

employees for overtime worked.  29 C.F.R. § 778.112.  Regulation 778.112 states:

---

[3] Some court in this district have adopted a three-part test for conditional certification requiring a minimal showing that (1) there is a reasonable basis that aggrieved individuals exist, (2) that the aggrieved individuals are similarly situated to the plaintiff, and (3) that those individuals want to opt-in to the lawsuit.  *See, e.g.*, *Casanova v. Gold's Texas Holdings Grp., Inc.*, 2014 WL 6606573, at *2 (W.D. Tex. Nov. 19, 2014).  Even if the Court applies this test instead of the "similarly situated" standard, Plaintiffs have satisfied their "minimal showing" for conditional certification.  As discussed below, Plaintiffs' claims are based on Defendant's uniform policy of not paying day rate workers overtime, regardless of position or classification.  The fifteen Opt-in Plaintiffs who have joined the four Plaintiffs show that Defendant maintained a common pay practice that violated the FLSA and that other similarly-situated day rate workers seek to enforce their FLSA rights and joint this case.

> If the employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked. <u>He is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek.</u>

*Id.* (emphasis added).  Failure to pay overtime compensation on a day rate plan for hours worked over forty in a workweek is a violation of the FLSA.[4]  *Solis v. Hooglands Nursery, L.L.C.*, 372 F. App'x 528, 529 (5th Cir. 2010).

Plaintiffs have presented sufficient evidence showing they were subject to the same policy or plan and thus are similarly situated under the "fairly lenient" standard at the notice stage.  Plaintiffs and Opt-in Plaintiffs were all compensated on a day rate basis and did not receive any overtime pay even though they often worked 84 hours or more in a workweek.  This shows Defendant maintained a common policy of not paying day rate employees overtime in direct violation the FLSA.  It is this policy that is the basis for Plaintiffs' claims, and its uniform application makes Plaintiffs similarly situated to all other putative class members, regardless of

---

[4] Defendant may claim that failure to pay overtime for day rate plans is not a violation of the FLSA if an exemption to the overtime requirement applies.  *See* 29 U.S.C. § 213 (stating employers are not required to pay an employee overtime if she is covered by one of a handful of exemptions); 29 C.F.R. § 541.604(b) (stating day rate plans may satisfy the salary basis test if a minimum guarantee is paid as a salary).  This argument does not preclude conditional certification since Defendant cannot show the positions satisfy the salary basis test required for the exemptions.  *See* 29 C.F.R. §§ 541.100, .200, .300 (requiring salary basis test for executive, administrative, and professional exemptions).  For a day rate compensation plan to constitute a salary under the test, it must include a "guarantee of at least the minimum weekly-required amount paid on a salary basis," and the guarantee amount must be reasonably related to the amount employees actually earn on a weekly basis.  29 C.F.R. § 541.604(b).  Here, Plaintiffs and Opt-in Plaintiffs have consistently stated they only received a day rate for days worked and did not receive any weekly guarantee.  This evidence is sufficient to constitute "substantial allegations" that Defendant maintained a common policy of not paying any minimum guarantee to day rate employees, making Plaintiffs and the putative class similarly situated on this issue.

job title[5] or classification as employee or independent contractor.  Indeed, the very fact that

Defendant used the same compensation policy to individuals paid on a day rate working in

myriad different positions and under difference classifications illustrates that it was

commonplace and that day rate employees are similarly situated.

> **c.  <u>Classification as Independent Contractors Does Not Preclude Conditional</u>**
> **<u>Certification</u>**

Defendant will likely argue that its classification of some Plaintiffs and Opt-in Plaintiffs

as independent contractors requires individualized inquiry, making conditional certification

inappropriate. This argument fails.  Determining whether a plaintiff is an employee under the

FLSA requires examining the "economic realities" of the plaintiff's and the defendant's

relationship.  *Thibault v. Bellsouth Telecomm., Inc.*, 612 F.3d 843, 845 (5th Cir. 2010).  The Fifth

Circuit has adopted five non-exclusive factors for examining the economic realities of this

relationship: (1) the permanency of the relationship; (2) the degree of control exercised by the

alleged employer; (3) the skill and initiative required to perform the job; (4) the extent of the

relative investments of the worker and the alleged employer; and (5) the degree to which the

worker's opportunity for profit and loss is determined by the alleged employer.  *Id.* at 846.

Courts in this circuit have declined to perform this analysis at the notice stage since it is a merits

---

[5] Defendant may argue Plaintiffs are not similarly situated to the putative collective members because their positions and duties varied.  These differences are immaterial for purposes of conditional certification in this case given Defendant's uniform policy of not paying day rate employees for any overtime hours they worked.  *See, e.g.*, *Behnken v. Luminant Min. Co., LLC*, 997 F. Supp. 2d 511, 522 (N.D. Tex. 2014) (granting conditional certification for all employees under common meal break policy and stating differences in the putative class job classifications, descriptions, and duties were not materially relevant to plaintiffs' allegations); *Aguilar v. Complete Landsculpture, Inc.*, 2004 WL 2293842, at *4 (N.D. Tex. Oct. 7, 2004) (holding different duties and hourly rates "immaterial" when conditional certifying collective class of foreman and laborers who were subject to same compensation scheme); *Crain v. Helmerich & Payne Int'l Drilling Co.*, 1992 WL 91946, at *3 (E.D. La. Apr. 16, 1992) (certifying conditional class of oil rig employees working in different locations and performing different duties since FLSA claims were premised on common company policy).

determination and at odds with conditional certification.  *See, e.g.*, *Gonzalez v. Tier One Sec., Inc.*, 2013 WL 1455587, at *2 (W.D. Tex. Apr. 8, 2013) (rejecting argument that determination on employer-employee relationship controlled conditional certification); *Jones v. JGC Dallas LLC*, 2012 WL 6928101, at *4 (N.D. Tex. Nov. 29, 2012) (declining to "engage in merits-based [independent contractor] analysis at the notice stage of a collective action"); *Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 864 (S.D. Tex. 2012) (stating courts "typically declined to apply the economic realities factors or other individualized analyses at the conditional certification stage."); *Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 471 (S.D. Tex. 2012) ("The Court believes that the economic factors test is likely not appropriate for determination at the first stage of FLSA class certification.").  As such, a determination on Plaintiffs' independent contractor classifications is premature and unnecessary at this time.

While the Court need not analyze the economic realities of Plaintiffs' relationship with Defendant, Plaintiffs have still presented sufficient evidence to satisfy their minimal burden at the notice stage.  Most Plaintiffs and Opt-in Plaintiffs were interviewed by Defendant for the position, and they often ending up working for Defendant for multiple years at a time. Defendant scheduled Plaintiffs and Opt-in Plaintiffs work days and hours, provided their necessary equipment, instructed them on how to perform their duties, and supervised their actual work.  Further underscoring that independent contractors and employees were virtually indistinguishable is the fact that some Opt-in Plaintiffs started as independent contractors and were hired as employees, but their duties did not change.  All of this evidence is sufficient to establish that independent contractors were similarly situated for purposes of notice.  *See, e.g.*, *Heeg*, 907 F. Supp. 2d at 864 (holding evidence of similar duties, compensation plans, and

overtime policies for employees and independent contractors sufficient for conditional

certification of independent contractors).

## II.   JUDICIAL NOTICE IS APPROPRIATE

### a.   Judicial Notice Protects Employee Rights

The benefits to the judicial system of collective actions "depend upon employees

receiving accurate and timely notice concerning the pendency of the collective action, so that

they can make informed decisions about whether to participate." *Hoffmann-La Roche,* 493 U.S.

at 170.  Accordingly, courts are encouraged to become involved in the notice process early to

ensure "timely, accurate, and informative" notice and to help maintain control of the litigation.

*Id.* at 171–72.  Court-authorized notice also serves the "legitimate goal of avoiding a multiplicity

of duplicative suits." *Id.* at 172.  This case is an appropriate case to send court-approved notice.

Prompt court action is needed because the claims of the potential opt-in plaintiffs are

being extinguished or diminished due to the running of the statute of limitations on their claims.

*Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 371 (S.D.N.Y. 2007).  Unlike Rule 23

class actions, the statute of limitations for a potential FLSA collective member who has not filed

a consent form is not tolled with the commencement of the action.  *Id.*  Rather, the potential

collective member's statutes of limitations continue to run until the individual "opts in" to the

case by filing a consent form.  *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 260 (S.D.N.Y. 1997).

"Thus, every day that passes is a day of damages each potential opt-in plaintiff will be unable to

recover.  Court-facilitated notice will prevent the continued erosion of these claims." *Lynch*, 491

F. Supp. 2d at 371.

### b.   The Proposed Notice is Accurate and Informative

Judicially authorized notice of a collective action under § 216(b) must be "timely, accurate, and informative."  *Hoffmann-La Roche*, 493 U.S. at 172.  Plaintiffs' proposed notice will provide employees with an accurate description of this lawsuit as well as their rights under the FLSA.  (*See* Ex. A.)  The proposed notice achieves the ultimate goal of providing employees accurate and timely notice concerning this collective action and should be adopted.

Plaintiffs requests that the Court authorize notice in the form of (1) mailing of the notice by Plaintiffs' counsel to all members of the putative collective class; and (2) emailing of the notice by Plaintiffs' counsel to all members of the putative collective class to their last known personal email address.  Issuance of notice through these methods will ensure that all potential class members are reached as soon as possible.  *Prejean v. O'Brien's Response Mgmt., Inc.*, 2013 WL 5960674, at *10 (E.D. La. Nov. 6, 2013) (granting request for notice by mail and email to oil rig workers since "both e-mail and first-class mail [are] both routine and reasonably calculated to accomplish the broad remedial goals of the notice provision of the FLSA"); *Pippins v. KPMG LLP*, 2012 WL 19379, at *14 (S.D.N.Y. Jan. 3, 2012) ("[G]iven the reality of communications today, that the provision of email addresses and email notice in addition to notice by first class mail is entirely appropriate."); s*ee also Pacheco v. Aldeeb*, 2015 WL 1509570, at *8 (W.D. Tex. Mar. 31, 2015) (allowing notice by mail and email); *Jones*, 2012 WL 6928101, at *5 (approving notice via first-class mail and email).  Because oil field workers' schedules often require working weeks at a time on location away from their homes, email notice is essential to make sure they receive notice and are given the opportunity to join the case.

Plaintiffs request that the notice period be set for 60 days, which is consistent with FLSA notice practices in other courts.  *McCloud v. McClinton Energy Grp., L.L.C.*, 2015 WL 737024, at *10 (W.D. Tex. Feb. 20, 2015) (noting most courts allow 60-day notice period in FLSA

cases); *Heeg*, 907 F. Supp. 2d at 865 (allowing 60-day notice period).  As mentioned, oil field workers frequently spend weeks working on oil rigs located far from their residences, making a notice period shorter than 60 days inappropriate for effective notice of the lawsuit.

Plaintiffs also request the Court authorize Plaintiffs to send a reminder notice, attached as Exhibit B, to putative class members 30 days before the deadline to "opt in."  *See Kidd v. Mathis Tire & Auto Serv., Inc.*, 2014 WL 4923004, at *3 (W.D. Tenn. Sept. 18, 2014) (allowing reminder notice to be sent); *Chhab v. Darden Restaurants, Inc.*, 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20, 2013) (same).  Alternatively, Plaintiffs request the Court authorize sending the Judicial Notice again 30 days before the "opt in" deadline.  *See Rebischke v. Tile Shop, LLC*, 2015 WL 321667, at *5 (D. Minn. Jan. 26, 2015) (approving second notice mailing to those who had not opted in by certain date*); *Pearsall-Dineen v. Freedom Mortg. Corp.*, 27 F. Supp. 3d 567, 575 (D.N.J. 2014) (same).

### c.   The Court Should Compel Defendant to Produce the Names and Contact Information for all Putative Collective Members

The Court should also order Defendant to provide Plaintiffs a list of all putative collective members and their contact information.  The identification of these individuals is necessary for Plaintiffs to provide those individuals with notice of the action as contemplated by the FLSA. *See Hoffmann-La Roche*, 493 U.S. at 170 (affirming district court decision permitting discovery of the names and addresses of the putative class). This is precisely the reason why the production of a list of potential class members is routinely disclosed in FLSA collective actions. *Id.* at 165.

Accordingly, Plaintiffs request that within ten (10) days of the Court's order, Defendant be required to provide Plaintiffs' counsel with a list of all persons working for Defendant who are, or were, receiving a day rate at any time from three years prior to the date of issuance of the Court's order on this motion.  This list should include each class member's (1) name, (2) last

known address and telephone number, (3) last known personal email address, and (4) social

security number (last four digits only).[6] *Lee v. Metrocare Servs.*, 980 F. Supp. 2d 754, 771 (N.D.

Tex. 2013) (ordering disclosure of names, last known addresses, telephone numbers, and email

addresses); *Fang v. Zhuang*, 2010 WL 5261197, at *4 (E.D.N.Y. Dec. 1, 2010) (allowing

discovery of names, contact information, employment dates, and Social Security numbers).

## **CONCLUSION**

Plaintiffs have met their burden of providing a "substantial allegations" to support

their claims that they and other individuals receiving a day rate are similarly situated and

that conditional certification and court-authorized notice is warranted.  Plaintiffs' motion

should be granted.

DATED: August 19, 2015

*/s/ Alexander M. Baggio*
NICHOLS KASTER, PLLP
Paul J. Lukas, MN Bar No. 22084X
Michele R. Fisher, MN Bar No. 030369
Alexander M. Baggio, MN Bar No. 389912*
4600 IDS Center
80 South 8th Street
Minneapolis, MN  55402
Telephone: (612) 256-3200
lukas@nka.com
fisher@nka.com
abaggio@nka.com
*Admitted Pro Hac Vice*

Attorneys For Plaintiffs and the Putative
FLSA Collective Class

---

[6] Due to the three-year time period, social security numbers are needed because, for some
employees, the contact information Defendant has will likely be outdated.  The social security
numbers will help in obtaining current contact information for putative class members.