IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RICHARD TAMEZ, BILLY TOM MEDLIN, GAVIN REYNOLDS, and JAMES CLARK, each individually and on behalf of all others similarly situated, | § § § § § § § | |
| Plaintiffs, | § | |
| v. | § | 5:15-CV-330-RP |
| BHP BILLITON PETROLEUM (AMERICAS), INC., | § § § § | |
| Defendant. | § | |

## ORDER

Before the Court are Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice, filed August 21, 2015 (Dkt. 25), Defendant's Response in Opposition, filed September 4, 2015 (Dkt. 29), and Plaintiffs' Reply, filed September 11, 2015 (Dkt. 30). By way of their motion, Plaintiffs seek conditional certification of a putative class under the Fair Labor Standards Act ("FLSA") and court-ordered notice to the class members of their right to opt into this action. Having considered the motion, responsive pleadings, relevant case law, and entire record in this action, the Court finds that Plaintiffs' motion should be granted in part. The Court conditionally certifies the class as proposed by Plaintiffs. However, the Court orders the parties to confer in an attempt to agree on the content and form of notice.

## BACKGROUND

Plaintiffs allege that while employed by Defendant BHP Billiton Petroleum (Americas) Inc. ("BHP Billiton") they were not compensated for overtime work in violation of the FLSA. BHP Billiton is a multinational corporation that produces major commodities including oil and gas. (Compl. ¶ 12, Dkt. 1.) It engages in exploration, development, production, and marketing

1

activities in more than a dozen countries around the globe. (*Id.*) The four Named Plaintiffs previously worked for BHP Billiton as health and safety environmental specialists ("HSE specialists"). (*Id.* ¶¶ 6-9, 14.) Plaintiffs allege that while they worked for BHP Billiton they were not paid for overtime work. Rather, they claim to have been paid a "day rate," which is a fixed amount of pay per day without additional compensation for the number of hours worked over forty in each workweek.

On April 24, 2015, Plaintiffs filed a complaint on behalf of themselves and others similarly situated for alleged violations of the overtime wage provisions of the FLSA. On August 21, 2015, Plaintiffs moved for conditional certification of a proposed class defined as:

> All persons who worked for Defendant and were paid a "day rate" at any time since three years prior to April 24, 2015, the filing date for the Complaint.

On September 4, 2015, Defendant filed a response in which it argued that the members of the proposed class are not similarly situated, and, thus, the action is not amenable to a collective resolution. The Court now considers whether it is appropriate to conditionally certify the class as defined by Plaintiffs.

## CONDITIONAL CERTIFICATION STANDARD

An employee can bring an action for violating the overtime provisions of the FLSA either individually or as a collective action on behalf of herself and "other employees similarly situated." 29 U.S.C. § 216(b). When brought as a collective action, the plaintiff may seek "conditional class certification" from the court, which permits the plaintiff to "send[ ] [a] court-approved written notice to employees, who in turn become parties to [the] collective action only by filing written consent with the court." *Genesis Healthcare Corp. v. Symczyk*, —— U.S. ——, 133 S. Ct. 1523, 1527 (2013) (citations omitted).

Although the Fifth Circuit has declined to adopt a specific test to determine when a court should conditionally certify a class, the majority of courts within this circuit have adopted the

two-stage approach articulated in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987). *See, e.g.*, *Vanzzini v. Action Meat Distribs., Inc.*, 995 F. Supp. 2d 703, 719 (S.D. Tex. 2014) (following *Lusardi*); *Mateos v. Select Energy Servs., LLC*, 997 F. Supp. 2d 640, 643 (W.D. Tex. 2013) (same); *Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 994 (E.D. Tex. 2011) (same); *Marshall v. Eyemasters of Tex., Ltd.*, 272 F.R.D. 447, 449 (N.D. Tex. 2011) (same).

The two stages of the *Lusardi* approach are the "notice stage" and the "decertification stage." *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1216 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). At the notice stage, the district court "determines whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 (5th Cir. 2010). If the court finds that the putative class members are similarly situated, then conditional certification is warranted and the plaintiff will be given the opportunity to send notice to potential class members. *Id.* After the class members have opted in and discovery is complete, the defendant may then file a decertification motion—the second stage of the *Lusardi* approach—asking the court to reassess whether the class members are similarly situated. *Mooney*, 54 F.3d at 1214. At that point the Court will fully evaluate the merits of the class certification.

**ANALYSIS**

In the Complaint and the affidavits attached to the motion for conditional certification, Plaintiffs have alleged (1) that they worked for BHP Billiton, (2) that they were paid a day rate, and (3) that such a compensation scheme is a *per se* violation of the FLSA. Defendant argues that members of the putative class are not similarly situated for two reasons: First, the class definition is not limited to a particular job position. Rather, the class encompasses all BHP Billiton employees who were paid a day rate, regardless of the nature of their responsibilities.

3

Second, the putative class includes workers designated as independent contractors whose liability under the FLSA turns on a fact-intensive inquiry. Thus, Defendant argues that it is unlikely that liability can be determined collectively at a later stage in the litigation. The Court will address the arguments in turn.

    A. Dissimilar Job Positions

Defendant's first argument is that the putative class encompasses numerous dissimilar job positions with distinct responsibilities. The four Named Plaintiffs all worked as HSE specialists. (Def.'s Resp. 2.) However, the class definition is not limited to workers who held this position and several plaintiffs have opted-in who worked for BHP Billiton in other capacities. In total, Opt-in Plaintiffs have held eight different positions including (1) HSE specialist, (2) completion supervisor, (3) drilling supervisor, (4) rig clerk, (5) drilling tech, (6) lead construction advisor, (7) safety improvement specialist, and (8) construction specialist. (*Id.*) Defendant asserts that the differences between the duties and associated with each position are "stark" and, therefore, the positions are "not interchangeable." (*Id.*) Accordingly, Defendant argues that class members with such disparate roles and responsibilities are not similarly situated.

Plaintiffs do not deny that the putative class encompasses many dissimilar job positions. Rather, they argue that these dissimilarities are not legally relevant. They contend that the alleged FLSA violations in this case do not turn on the character of the work performed. Accordingly, differences among the plaintiffs' job titles and duties will not prevent the Court from adjudicating the case in a collective fashion. Put differently, Plaintiffs assert that Defendant is focused on a distinction without a difference.

At the notice-stage under *Lusardi*, a plaintiff need only provide substantial allegations that class members were victims of a single, decision, policy or plan. *Mooney*, 54 F.3d at 1214 n.8; *Pedigo v. 3003 S. Lamar*, LLP, 666 F. Supp. 2d 693, 698 (W.D. Tex. 2009). A plaintiff is not required to show that class members are identical. *Pedigo*, 666 F. Supp. 2d at 698; *see also*

*Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 468 (S.D. Tex. 2012) (quoting *Jesiek v. Fire Pros, Inc.*, 275 F.R.D. 242, 246 (W.D. Mich. 2011)). Rather, plaintiffs must show that class members are "similarly situated . . . in relevant respects *given the claims and defenses asserted.*" *Walker*, 870 F. Supp. 2d at 466 (quoting *Aguirre v. SBC Commc'ns, Inc.*, No. CIV.A. H-05-3198, 2006 WL 964554, at *6 (S.D. Tex. Apr. 11, 2006)) (emphasis added); *see also Casanova v. Gold's Texas Holdings Grp., Inc.*, No. SA:13-CV-1161-DAE, 2014 WL 6606573, at *2 (W.D. Tex. Nov. 19, 2014). Accordingly, the question before the Court is whether the differences between class members demonstrated by Defendant are relevant to the claims made by Plaintiffs.

Generally, courts require that members of an FLSA class have similar job titles and responsibilities. *See, e.g.*, *Pacheco v. Aldeeb*, No. 5:14-CV-121-DAE, 2015 WL 1509570, at *6 (W.D. Tex. Mar. 31, 2015) (holding that for class members to be similarly situated they must be subject to common pay provisions *and* have similar job requirements); *Vasquez v. Am. Bor-Trench, Inc.*, No. 4:12-CV-3181, 2014 WL 297414, at *3 (S.D. Tex. Jan. 23, 2014) (same). The purpose of requiring class members to have similar job positions is to ensure judicial efficiency by "avoiding the need for individualized inquiries into whether a defendant's policy violates the FLSA as to some employees but not others." *Pacheco*, 2015 WL 1509570, at *7. Plaintiffs are generally required to have held similar jobs, because the nature of the work performed by each plaintiff will determine either (a) whether an FLSA violation occurred and (b) whether a relevant FLSA exemption applies. Plaintiffs contend, however, that this justification for requiring plaintiffs to have held similar job positions does not apply here.

The alleged FLSA violations in this case do not depend on the job title or responsibilities of each particular plaintiff. Plaintiffs allege that they were paid a fixed amount per day without regard for the number of hours worked. Plaintiffs argue that such a compensation scheme is a

*per se* violation of the FLSA and its implementing regulations.[1] If Plaintiffs are correct, then BHP Billiton violated the FLSA with regard to every putative plaintiff regardless of their particular job position. In some cases, plaintiffs allege FLSA violations that require showing not only the existence of a common compensation scheme but also certain factual predicates. In these cases, it may be appropriate to require the class be limited to a particular job position in order to provide the court some assurance that the relevant facts are common across the class. Whereas here, Plaintiffs allege that the compensation scheme is in of itself a violation the FLSA. No further factual inquiry is necessary. Accordingly, liability can be determined collectively without limiting the class to a specific job position.

Similarly, Defendants do not plead any exemptions that would require the class to be limited to a particular type of job. In some cases, the defendants argue that the plaintiffs fall into one of a number of categories of employees that are exempt from the overtime protections of the FLSA. In those cases, it may be reasonable to limit the class definition to a particular job type in order to ensure that the facts which will determine the applicability of the relevant exemption are common across the class. *See Pacheco v. Aldeeb*, 2015 WL 1509570, at *7 (W.D. Tex. Mar. 31, 2015) ("The 'similarly situated' inquiry requires similarity in job duties . . . in part because those factors determine whether an employee is exempt from the FLSA's requirements."). However, in this case Defendant has not raised any exemption defenses.[2]

---

[1] Plaintiffs cite 29 C.F.R § 778.112 and conclude that "[f]ailure to pay overtime compensation on a day rate plan for hours worked over forty in a workweek is a violation of the FLSA." (Pls.' Mot. Conditional Certification 6-7, Dkt. 25.) Whether or not this legal conclusion is correct , it does not depend on any factual predicates specific to each individual plaintiff other than the fact that the plaintiff was paid a fixed day rate.

[2] FLSA exemptions are affirmative defenses which generally must be pled in the defendant's answer. *See Diaz v. Jaguar Rest. Grp., LLC*, 627 F.3d 1212 (11th Cir. 2010) (holding that FLSA exemptions are waived unless pled as an affirmative defense in the answer). In its Answer, Defendant lists fifteen "affirmative and other defenses," none of which raise an exemption under the FLSA. (Answer 1-3, Dkt. 7.) In their motion for conditional certification, Plaintiffs assert that no exemption defenses have been raised. (Pls.' Mot. Conditional Certification 2, Dkt. 25.) Defendant does not refute this assertion or otherwise raise any exemptions in its response to the motion for conditional certification. (Def.'s Resp., Dkt. 29.)

Accordingly, there is no need to limit the class to ensure that the applicability of an exemption can be assessed collectively.

Defendant has demonstrated that the putative class encompasses a wide range of job titles and responsibilities, but it has not shown why these differences are relevant "given the claims and defenses asserted." *Walker*, 870 F. Supp. at 466. A class that encompasses a wide range of job positions may be conditionally certified as long as the differences between class members are not material to the allegations in the case. *Behnken v. Luminant Min. Co., LLC*, 997 F. Supp. 2d 511, 522 (N.D. Tex. 2014) ("Because it appears from the record developed thus far that the employees' job classifications, descriptions, or duties do not affect any of the facts that are material to plaintiffs' claim, these differences are not sufficient to defeat conditional certification"); *Aguilar v. Complete Landsculpture, Inc.*, No. 3:04-CV-0776 D, 2004 WL 2293842, at *4 (N.D. Tex. Oct. 7, 2004) ("The claims of the putative class members are similar in that . . . they were compensated under the same regimen. Thus under plaintiffs' theory of the case, the fact that [they] had somewhat different duties and rates of pay is immaterial."); *Crain v. Helmerich & Payne Int'l Drilling Co.*, No. CIV. A. 92-0043, 1992 WL 91946, at *3 (E.D. La. Apr. 16, 1992) ("That the plaintiffs and the potential claimants may have worked in different areas of the country, on different types of rigs, and performed different jobs is not dispositive. . . . [W]hat matters is that the fundamental allegation is common to all the . . . plaintiffs and dominates each of their claims."). The class definition proposed by Plaintiffs is admittedly broad. But, the Court nonetheless finds that dissimilar job responsibilities among the class have not been shown to be relevant to the Plaintiffs' FLSA allegations and, thus, are not a barrier to conditional certification.

B. Dissimilar Employment Status

Defendant also argues that the members of the putative class are not similarly situated insofar that determining whether each class member is an employee for FLSA purposes requires a fact-intensive inquiry. The proposed class definition includes workers BHP Billiton

7

categorized as independent contractors. The overtime protections under the FLSA only apply to employees. In order to determine whether a plaintiff designated as an independent contractor is nonetheless considered an employee under the FLSA, courts look to the "economic realities" of the relationship between the plaintiff and the defendant. *Thibault v. Bellsouth Telecomm., Inc.*, 612 F.3d 843, 845 (5th Cir. 2010). The Fifth Circuit has adopted five factors for examining the economic realities of this relationship: (1) the permanency of the relationship; (2) the degree of control exercised by the alleged employer; (3) the skill and initiative required to perform the job; (4) the extent of relative investments of the worker and the alleged employer; and (5) the degree to which the worker's opportunity for profit and loss is determined by the alleged employer. *Id.* at 846. BHP Billiton's argument is that this test is fact intensive and, thus, does not lend itself to common proof. Each class member may or may not be an employee depending on the particularities of his or her situation. Accordingly, Defendant argues that the Court should not conditionally certify a class when there is no guarantee that the class is sufficiently cohesive to allow for a collective resolution.

Courts are split as to whether the economic realities test should be utilized when determining whether to conditionally certify a class in an FLSA action concerning an allegedly wrongful independent contractor designation. *See generally Walker*, F. Supp. 2d at 470-71 (collecting divergent cases). Some courts have held that the economic realities inquiry is only appropriate at the decertification stage. *See, e.g. Gonzalez v. Tier One Sec., Inc.*, No. SA-12-CV-806-XR, 2013 WL 1455587, at *2 (W.D. Tex. Apr. 8, 2013) ("Defendants' argument that their classification of the [plaintiffs] as independent contractors (and not employees) wholly dictates that conditional certification is inappropriate is without merit."); *Jones v. JGC Dallas LLC*, No. 3:11-CV-2743-O, 2012 WL 6928101, at *4 (N.D. Tex. Nov. 29, 2012) ("Defendants argue that this case is not appropriate for adjudication as a collective action because Plaintiffs cannot demonstrate the requisite employer/employee relationship. This is a merits-based argument, and courts are not to engage in merits-based analysis at the notice stage of a collective

action."); *Walker*, 870 F. Supp. 2d at 471 ("The Court believes that the economic factors test is likely not appropriate for determination at the first stage of FLSA class certification."). Other courts have held that the economic realities test ought to inform the assessment of whether class members are similar enough to warrant conditional certification. *See, e.g.*, *Christianson v. NewPark Drilling Fluids*, LLC, No. CIV.A. H-14-3235, 2015 WL 1268259, at *4 (S.D. Tex. Mar. 19, 2015) (holding that conditional certification requires members of the putative class to be "similarly situated for purposes of applying the economic realities test at the appropriate phase of [the] case in the future"); *Andel v. Patterson-UTI Drilling Co.*, LLC, 280 F.R.D. 287, 289 (S.D. Tex. 2012) (quoting *Bamgbose v. Delta-T Grp.*, Inc., 684 F. Supp. 2d 660, 668 (E.D. Pa. 2010) (holding that "a court 'must analyze whether the [putative collective action members] are similarly situated with respect to the analysis it would engage in to determine whether the workers are employees or independent contractors.'").

Given the divergent case law, it is unclear what role the economic realities test ought to play at the notice stage under *Lusardi*. But the Court need not resolve this issue now. Even stipulating that "Plaintiffs must prove they are similarly situated through the lens of the economic realities test" (Def.'s Resp. 10), the Court nonetheless concludes that conditional certification is justified. After looking to the allegations and evidentiary support provided by Plaintiffs, the Court finds that there is sufficient reason to believe that the members of the putative class are likely to share a common employment status, and that accordingly the economic realities test can be applied "to the class as a whole." *Andel*, 280 F.R.D. at 290.

Plaintiffs have presented some evidence that members of the putative class are similarly situated with regard to the economic realities test. Specifically, they have provided declarations from four Named Plaintiffs and nine Opt-In Plaintiffs. The declarations consistently state that Defendant (1) interviewed Plaintiffs for their position, (2) scheduled the days and hours Plaintiffs were required to work, (2) provided the equipment necessary to perform their duties, (3)

instructed them on how to perform their duties, and (4) supervised their performance. (Pls.' Mot. Conditional Certification 3, Dkt. 25.)

Defendant questions the credibility of this evidence, claiming that the declarations are identical and include only generalities and conclusory statements. (Def.'s Resp. 12-13). Plaintiffs' declarations are admittedly skeletal. But, this is not the proper stage of the litigation to assess the credibility of evidence. *See Lay v. Gold's Gym Int'l, Inc.*, No. SA-12-CV-754-DAE, 2013 WL 5595956, at *5 (W.D. Tex. Oct. 4, 2013) (quoting *Brasfield v. Source Broadband Servs., LLC*, 257 F.R.D. 641, 642 (W.D. Tenn. 2009)) ("At the notice stage of conditional certification, 'the Court does not resolve factual disputes . . . or make credibility determinations.'") Moreover, Plaintiffs reasonably point out that it is unfair to discredit the declarations as formulaic, given that they are trying to demonstrate the existence of a uniform policy. The fact that Plaintiffs had comparable experiences while working for Defendant is precisely the point the declarations are intended to convey.

Cursory though they may be, the declarations provide evidence of a common employment policy that is sufficient to warrant conditional certification. Collectively, these declarations suggest that Defendant exercised similar degrees of control over class members, that Defendant was principally responsible for capital investments, and that, generally, class members were subject to similar employment policies and practices. Albeit minimal, this evidence suggests that the question of whether class members were independent contractors or employees will be amenable to a collective determination at a later stage in the indication. This evidence is sufficient given the lenient standard applied at the notice stage. *See Walker*, 870 F. Supp. 2d at 471 (finding that "minimal evidence" is sufficient to demonstrate similarity under the economic realities test); *Heeg v. Adams Harris, Inc.,* 907 F. Supp. 2d 856, 864-65 (S.D. Tex. 2012) (finding that "some initial evidence" is sufficient to demonstrate similarity under the economic realities test).

The Court finds that Plaintiffs have provided enough evidentiary support for their allegations to justify the issuance of notice to members of the putative class. The Plaintiffs' declarations provide the Court a reasonable assurance that class members were subject to common employment policies and, thus, share an employment status for FLSA purposes. It is far from settled that the economic realities test will view each member of the class in the same light. Discovery may reveal dissimilarities that render the class definition overly-broad and unworkable. The purpose of conditional certification, however, is not to render a final judgment on the suitability of a class definition. Rather, the purpose of the notice stage under *Lusardi* is simply to determine whether it is appropriate to provide notice to members of the class and to proceed with discovery. "Because the court has minimal evidence, this determination is made using a fairly lenient standard." *Mooney*, 54 F.3d at 1214. At this stage, Plaintiffs are only required to show "some factual support" for the proposition that they were subject to a common class-wide policy. *Heeg,* 907 F. Supp. 2d at 861 (S.D. Tex. 2012). The Court finds that Plaintiffs have met this standard.

C. Notice

In addition to requesting conditional certification, Plaintiffs also move the Court to authorize the issuance of notice to class members, informing them of this action and explaining their right to opt-in as plaintiffs. Defendant objects to the content and form of the notice proposed by Plaintiffs. Accordingly, Defendant has asked the Court to order parties to confer and attempt to reach an agreement as to the type of notice to be provided. The Court believes that authorizing notice at this time would be premature. Accordingly, the Court directs the parties to confer and attempt to reach a mutual agreement. If an agreement cannot be reached, Plaintiffs are directed to submit a renewed motion for court-authorized notice. At that time, the Court will resolve any remaining disputes relating to the issuance of notice.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice. The Court conditionally certifies the following class under the FLSA:

> All persons who worked for Defendant and were paid a "day rate" at any time since three years prior to April 24, 2015, the filing date for the Complaint.

The Court further ORDERS the parties to confer and attempt to reach an agreement as the form and substance of the notice to be issued to class members. If the parties are unable to reach an agreement, Plaintiffs are ORDERED to submit a renewed motion for court-authorized notice on or before October 19, 2015.

**SIGNED** on October 5, 2015.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE